IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHEILA K. MORSE,

      Plaintiff,                             No. CIV S-05-0569 PAN

      vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.                         <u>ORDER</u>

_____/

        The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to proceed before a magistrate judge).  Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act").  For the reasons discussed below, the court will deny Plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////

/////

/////

/////

1

## I. Factual and Procedural Background

In a decision dated April 22, 2004, the ALJ determined Plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. The ALJ found Plaintiff has severe impairments of degenerative disc disease of the cervical and lumbar spine, but that these impairments do not meet or medically equal a listed impairment; Plaintiff's allegations regarding the extent of her impairment were not entirely credible; Plaintiff has the residual functional capacity to perform light work with no more than occasional climbing, stooping, crawling, or kneeling; Plaintiff is not precluded from performing her past relevant work; and Plaintiff is not disabled.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

Administrative Transcript ("AT") 25.

Plaintiff contends that the ALJ committed multiple errors.  First, Plaintiff argues that the ALJ erred by failing to find at step two of the sequential analysis that her depression was a severe impairment.  Second, Plaintiff states that the ALJ erred in his weighing of the medical opinions.  Third, Plaintiff asserts that the ALJ did not properly evaluate lay witness testimony.  Fourth, Plaintiff argues that the ALJ erred in evaluating Plaintiff's subjective complaints of impairment.  Finally, Plaintiff contends that, in light of Plaintiff's residual functional capacity, the ALJ's finding that Plaintiff could perform her past relevant work was in error.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).  Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

III. Analysis

    a. The ALJ's Finding That Plaintiff's Depression Was Not a Severe Impairment Was Not in Error.

The ALJ found that Plaintiff did not suffer from the severe impairment of depression. AT 22. In reaching this finding, the ALJ noted the Plaintiff's inconsistent claims regarding depression, as well as the lack of medical evidence to support a conclusion that Plaintiff's depression was severe. Id. This finding was not in error.

Plaintiff contends that the ALJ improperly assessed the severity of her impairments and failed to consider all of them in combination. An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." Social Security Ruling (SSR) 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523.

Plaintiff argues the ALJ failed to recognize as severe Plaintiff's depression and that the ALJ failed to consider her depression in combination with her various physical impairments, including neck pain, scoliosis, varicose veins, and tendinitis in her wrists, elbows, and knees. Although the burden is on Plaintiff at step two of the sequential evaluation, see Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998), counsel for Plaintiff has offered no meaningful argument in support of the claim that the ALJ erred. The evidence in the record

simply does not demonstrate how Plaintiff's complaint of depression impacts her ability to engage in basic work activities.

As noted by the ALJ, Plaintiff's initial claim for benefits and her request for reconsideration made no mention of depression. AT 22, 55. Plaintiff's description of her daily activities showed no mental impairment, AT 76-78, and none was noted by third-party observers, AT 66. While her treatment records at the time of her application on May 6, 2002, show a consistent history of neck and back pain, there is no mention of depression. AT 57-58, AT 112, 117-18, 129-45, 184-86. The only prescription medications provided by Plaintiff's treating physicians during this time addressed her pain symptoms. AT 60.

Furthermore, upon her request for an administrative hearing, Plaintiff described her deteriorating symptoms. AT 96. Included in this description was Plaintiff's increasing pain from two bulging discs in her back, as well as fibromyalgia. Id. However, in spite of the fact that Plaintiff stated she was taking Prozac, she made no mention of depression or any other mental impairment as the source of her disability. AT 96-99.

Plaintiff's treating physician, Dr. Zamani, prescribed Prozac on February 27, 2003. However, this prescription is not supported by any clinical findings in Dr. Zamani's records or in any of the records of Plaintiff's other treating physicians. AT 166. The ALJ properly noted that, while Plaintiff testified to receiving psychiatric care, there was no evidence of such treatment, nor any referral for specialized mental health care by any of Plaintiff's treating physicians. AT 22.

The ALJ was under no obligation to order a consultative psychiatric evaluation. Evidence raising an issue requiring the ALJ to investigate further depends on the case. Generally, there must be some objective evidence suggesting a condition which could have a material impact on the disability decision. See Smolen, 80 F.3d at 1288; Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir.1991). Without more, a single prescription for Prozac is not objective evidence of an impairment requiring further

1 investigation.

2   The ALJ correctly found that Plaintiff's depression was not severe. Plaintiff made
3 no initial claim of disability based upon depression and the extensive medical evidence contains
4 only one reference to the impairment. Even under the de minimis standards of step two, there is
5 no indication that Plaintiff's depression, to the extent it limits her ability to function, precludes
6 her from working. The ALJ's finding was not in error.

7   b. <u>The ALJ's Weighing of the Medical Evidence in this Case Was Not in Error.</u>

8   The ALJ credited the medical opinions of the examining physician, Dr. Phillips,
9 as well as the State Agency. AT 23. In addition, the ALJ rejected the assessment of a second
10 examining physician, Dr. O'Brien. AT 23. The ALJ's weighing of these opinions was proper.

11   The weight given to medical opinions depends in part on whether they are
12 proffered by treating, examining, or non-examining professionals. <u>Lester v. Chater</u>, 81 F.3d 821,
13 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional,
14 who has a greater opportunity to know and observe the patient as an individual. <u>Id</u>.; <u>Smolen</u>, 80
15 F.3d at 1285.

16   To evaluate whether an ALJ properly rejected a medical opinion, in addition to
17 considering its source, the court considers whether (1) contradictory opinions are in the record;
18 and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a
19 treating or examining medical professional only for "clear and convincing" reasons. <u>Lester</u> , 81
20 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be
21 rejected for "specific and legitimate" reasons. <u>Lester</u>, 81 F.3d at 830. While a treating
22 professional's opinion generally is accorded superior weight, if it is contradicted by a supported
23 examining professional's opinion (supported by different independent clinical findings), the ALJ
24 may resolve the conflict. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing
25 <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give
26 weight to conclusory opinions supported by minimal clinical findings. <u>Meanel v. Apfel</u>, 172

F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

Dr. Phillips, a board eligible neurologist, examined Plaintiff on October 6, 2003.  AT 203-206.  Dr. Phillips reviewed Plaintiff's medical records and conducted a thorough examination that found chronic cervical pain with symptom elaboration, chronic thoracic and lumbrosacral pain with symptom elaboration, and chronic opiate habituation and tolerance.  AT 206.  Dr. Phillips stated that Plaintiff was capable of performing light duty with restrictions "per light duty guidelines."  Id.

However, in his functional assessment, Dr. Phillips inconsistently indicated on his medical source statement that Plaintiff could only stand or walk for a total of two hours in an eight hour day.  AT 208.  Dr. Phillips also noted that Plaintiff could only occasionally climb, balance, kneel, crouch, crawl, or stoop.  AT 211.  The ALJ's attempt to reconcile these conflicting opinions does not withstand scrutiny.

The ALJ is charged with resolving contradictions in the medical evidence.  Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  When the ALJ's interpretation of that evidence is reasonable, it is not the Court's province to second guess it.  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  The ALJ's interpretation of the conflict in this case is not reasonable.

The full range of light work requires standing or walking for up to six hours in an eight hour day, with sitting occurring intermittently in the remaining time.  SSR 83-10.  The ALJ stated that Dr. Phillips' finding that Plaintiff could only stand or walk two hours in an eight hour day did not contradict his earlier opinion that Plaintiff was capable of light duty because Dr. Phillips did not expressly limit Plaintiff to two hours standing or walking in his earlier opinion.  AT 23.  The ALJ is correct in finding that, if Plaintiff can stand and walk six hours in an eight hour day, they must also be able to stand and walk two hours in an eight hour day.  However, this

finding ignores the fact that Dr. Phillips identified the total amount of time Plaintiff could stand or walk, AT 208, not simply some amount of time that Plaintiff could stand and walk. Clearly, this total time offered by Dr. Phillips differs from the requirements of light work.

However, this misinterpretation of the evidence and the logical flaw resulting therefrom does not require remand as the ALJ alternatively presented specific and legitimate reasons for rejecting Dr. Phillips' two hour standing and walking limitation. The ALJ found that the objective evidence from Dr. Phillips' examination did not support a functional assessment limiting Plaintiff to two hours standing or walking in an eight hour workday. AT 23. As described by the ALJ, during the course of Dr. Phillips' examination, he found few objective measures of impairment. Dr. Phillips reported that Plaintiff's strength was normal, her range of motion within normal limits, her sensation to light touch and pinprick normal, her coordination was normal, and her gait was normal. AT 205-06.

These findings were essentially consistent with those of the initial examining physician, Dr. O'Brien. AT 113-18. In her examination completed on June 22, 2002, Dr. O'Brien found Plaintiff to suffer from arthritis and neck pain, both consistent with osteoarthritis. AT 117. In addition, Dr. O'Brien diagnosed Plaintiff with low back pain without evidence of radiculopathy.[2] Id. Like Dr. Phillips, Dr. O'Brien stated that Plaintiff should be able to stand and walk two hours in an eight hour day, sit for six hours in an eight hour day, lift up to 10 pounds frequently and 20 pounds occasionally, frequently bend and kneel, and occasionally stoop, crouch, or climb. Id.

The ALJ also rejected Dr. O'Brien's opinion. AT 23. Like his alternative rejection of Dr. Phillips' opinion, the ALJ noted that the objective evidence from Dr. O'Brien's examination did not support her restrictive assessment of Plaintiff's ability to stand or walk. Id.

---

[2]Radiculopathy is a clinical situation where the radicular nerve (nerve root) is compressed by a displaced disc. The problem tends to occur most frequently in the cervical and lumbar spine. See http://www.medhelp.org/HealthTopics/Radiculopathy.html.

1  Dr. O'Brien found that Plaintiff had no difficulties walking and a normal gait, as well as
2  essentially normal strength and range of motion.  AT 116.  Furthermore, the ALJ noted the lack
3  of clinical findings to support any impairment in Plaintiff's lower extremities, the basis of Dr.
4  O'Brien's walking and standing limitations.  Id.  This finding was not in error.
5           Plaintiff received two MRIs and one x-ray of her back and spine.  AT 171, 190,
6  192.  These films showed some impairment, including degenerative changes, bulging, and
7  narrowing.  However, in response to these objective findings, Plaintiff was treated only with
8  prescription medications for her pain and two epidurals to address her upper extremity symptoms
9  and shooting pain on the right side.  AT 169-184.  The ALJ correctly noted that there was little
10 clinical evidence in the record to support any limitation based upon impairment to the lower
11 extremities.  Indeed, Plaintiff's most recent medical records from her treating physician show no
12 complaints of pain in her legs nor any difficulty in mobility.  AT 219-29.
13          The opinions of treating and examining physicians must be supported by the
14 record as a whole.  Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,
15 1195 (9th Cir. 2004).  Furthermore, rejection of those opinions is appropriate when they are
16 unsupported by objective evidence.  Tonapetyan v. Halter, 242 F.3d , 1149 (9th Cir. 2001).  As a
17 result of the inconsistencies between their findings and conclusions, as well as the lack of clinical
18 support throughout the record, the ALJ's rejection of the two hour limitations imposed by Dr.
19 Phillips and Dr. O'Brien was supported by substantial evidence in the record.
20          As additional support for his rejection of the opinions of the examining
21 physicians, the ALJ relied upon doctors with the State Agency who evaluated Plaintiff's medical
22 records on July 10, 2002.  AT 152-59.  The State Agency found evidence of some symptom
23 exaggeration and concluded that Plaintiff's symptoms exceeded the medical findings.  AT 154,
24 157.  In contrast to Dr. Phillips and Dr. O'Brien, the nonexamining doctors determined that
25 Plaintiff was capable of frequent balancing and occasional climbing, stooping, kneeling,
26 crouching, and crawling.  Id.  Doctors found no manipulative, visual, communicative, or

environmental limitations. AT 155-56.

The opinions of nonexamining physicians cannot serve as the sole basis to discredit the opinions of treating or examining physicians. Magallanes, 881 F.2d at 752. However, when they are consistent with other objective evidence in the record, they can constitute substantial evidence. Id. Given the nature of the minimal objective findings by the examining physicians, the ALJ's reliance on the opinion of the State Agency was proper.

The opinions of Plaintiff's treating physicians support the ALJ's conclusion about Plaintiff's residual functional capacity. Several doctors treated Plaintiff at Kaiser Permanente, including Dr. Zarmani and Dr. Kane. Over the course of her treatment, Plaintiff was seen for back and neck pain, elbow pain, leg pain, irregular menses, fibromyalgia, and depression. AT 131, 133, 165, 180. Plaintiff was also treated by Dr. Quon of the Kaiser Permanente Spine Clinic starting on September 26, 2002. AT 184-87. During his initial evaluation, Dr. Quon made many primarily normal findings, stating that Plaintiff's examination was nonfocal for specific radicular symptoms. AT 185. He did notice poor effort from Plaintiff and expressed concern about malingering, AT 185, 186; however, he later amended his report to state that an MRI completed on November 25, 2002, showed some objective evidence consistent with Plaintiff's complaints. AT 193. By March 12, 2003, following two epidurals, Plaintiff reported to Dr. Quon that her pain had reduced 50 percent. AT 201.

None of these medical sources imposed any functional limitations on Plaintiff. There is no indication in the record that any doctor felt the need to restrict Plaintiff's activities, nor did any doctor note the need for a cane or ambulatory device to assist Plaintiff's mobility. Rather, as Plaintiff stated, she spontaneously used a cane when she felt she needed it. AT 261. Treatment was generally conservative, without any evidence of the need for surgery or more aggressive action. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001). Furthermore, progress had been noted by Dr. Quon following Plaintiff's epidurals. AT 169.

The ALJ properly evaluated the medical evidence in his determination of

1  Plaintiff's residual functional capacity.  The objective findings in the medical record of the
2  examining physicians, the opinions of the State Agency doctors, and the history of treatment for
3  Plaintiff's impairment provides substantial evidence for the ALJ's conclusion that Plaintiff is
4  able to perform light duty with occasional postural limitations.  The ALJ's finding will not be
5  disturbed.

6      c. The ALJ's Evaluation of the Lay Witness Testimony Was Not in Error.

7  Plaintiff's husband submitted a letter to the ALJ describing his perception of
8  Plaintiff's impairment.  AT 106-08.  In his letter dated July 6, 2003, Plaintiff's husband stated
9  that Plaintiff could no longer work because of her various impairments.  AT 106.  In spite of the
10 fact that the ALJ failed to discuss this lay witness testimony, remand is not appropriate.

11 "[L]ay witness testimony as to a claimant's symptoms or how an impairment
12 affects ability to work is competent evidence, and therefore cannot be disregarded without
13 comment."  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala,
14 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a
15 plaintiff's symptoms and daily activities are competent to testify to condition).  "If the ALJ
16 wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to
17 each witness."  Dodrill, 12 F.3d at 919.  The ALJ failed to provide any direct discussion of
18 Plaintiff's husbands letter.  This error was harmless.  See  Curry v. Sullivan, 925 F.2d 1127, 1129
19 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security cases).

20 It cannot be said that Plaintiff's husband provided unique evidence unconsidered
21 by the ALJ.  It was harmless error for the ALJ to not consider Plaintiff's husband's testimony as
22 his description of Plaintiff's symptoms of pain and depression, and their manifestation on
23 Plaintiff's daily activities, were the same as those put forth by Plaintiff.  See Vincent v. Heckler,
24 739 F.2d 1393, 1395 (9th Cir. 1984)(holding that harmless error applied after ALJ failed to
25 discuss claimant's son's testimony because decision was supported by substantial medical
26 evidence).  Plaintiff's husband's letter merely repeats Plaintiff's discredited testimony, and does

not describe any different or greater level of impairment than that testified to by Plaintiff. Consequently, it is difficult to see how the ALJ's failure to explicitly accept or reject this testimony affected his ultimate decision. See Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996); see also Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)(holding that "although specific articulation of credibility findings is preferable, we consider the lack thereof to constitute a deficiency in opinion-writing that does not require reversal" when the ultimate findings are supported by substantial evidence in the record).

Plaintiff's husband provided no additional medical evidence for the ALJ to consider in his evaluation of Plaintiff's claim. The ALJ must determine Plaintiff's residual function based upon medical evidence provided by acceptable medical sources. 20 C.F.R. § 404.1513(a). Letters from third-party witnesses are not the same as "medically acceptable...diagnostic techniques" used to establish disability. 42 U.S.C. § 423(d)(3); Vincent, 739 F.2d at 1395. Rather, they are merely one factor that the ALJ may consider in his evaluation. See 20 C.F.R. § 404.1513(d)("[W]e may also use evidence from other sources to show the severity of your impairment").

The ALJ failed to properly evaluate Plaintiff's husband's letter. However, this error was harmless. Plaintiff's husband provided no additional evidence not already considered by the ALJ. Remand is not appropriate.

    d. The ALJ's Assessment of Plaintiff's Credibility Was Not in Error.

The ALJ found Plaintiff to be not credible. AT 23. The ALJ cited numerous reasons for his assessment of Plaintiff's credibility, including a lack of objective clinical evidence consistent with the severity of Plaintiff's complaints, a lack of follow-up treatment, signs of malingering, conservative treatment, and Plaintiff's daily activities. AT 23-24. The ALJ's finding was based upon substantial evidence in the record and is not in error.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g.,

1  Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make

2  an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad

3  v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

4  supported by "a specific, cogent reason for the disbelief").

5          In evaluating whether subjective complaints are credible, the ALJ should first

6  consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

7  F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

8  the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

9  medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

10 (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

11 testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

12 prescribed course of treatment, and (3) the applicant's daily activities.  Smolen, 80 F.3d at 1284;

13 see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work

14 records, physician and third party testimony about nature, severity and effect of symptoms, and

15 inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security

16 Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly

17 debilitating medical problem may be a valid consideration by the ALJ in determining whether the

18 alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of

19 HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ may rely, in part, on his or her own

20 observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot

21 substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

22 Without affirmative evidence of malingering, "the Commissioner's reasons for rejecting the

23 claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec.

24 Admin., 169 F.3d 595, 599 (9th Cir. 1999).

25         Plaintiff testified that she experienced pain in her back that rated 15 on a scale of

26 one to 10; however, recent treatment had reduced her worst pain to a level of eight.  AT 258-59.

According to Plaintiff, at times the pain was so severe that it prevented her from driving or dressing herself, and occasionally forced her husband to carry her from the store to the car. AT 258, 261. As a result of her impairment, Plaintiff testified that she was no longer able to do anything productive. AT 260.

The ALJ's refusal to credit these complaints is supported by clear and convincing reasons. As found by the ALJ, Plaintiff's description of her pain was not in proportion to the generally conservative treatment she received. AT 24. As described above, none of Plaintiff's doctors recommended any treatment greater than medication. There was no indication of any need for surgery, nor was any recommendation made that Plaintiff use a cane or other ambulatory device, or that she discontinue any of her daily activities. This disconnect between conservative treatment and subjective, exaggerated complaints of pain is a proper basis upon which to evaluate Plaintiff's credibility. See Meanel, 172 F.3d at 1114.

The ALJ also noted the lack of clinical findings to support the full extent of Plaintiff's allegations. AT 23. The ALJ properly described the MRIs and x-rays in the record that showed some objective evidence of impairment, but consistently described Plaintiff's problems as minimal, AT 171, or mild and moderate, AT 190. As detailed above, examining physicians reported a substantial number of normal findings, and noted that Plaintiff's ability to move and walk was largely unimpaired. AT 115-17, 204-06. State Agency doctors reported that clinical findings did not support the full extent of Plaintiff's symptoms. AT 157.

The ALJ also noted that Plaintiff demonstrated some signs of malingering. Dr. Phillips noted symptom exaggeration. AT 206. Dr. O'Brien and Dr. Quon reported one positive Waddell sign. AT 116, 185. A single positive Waddell sign is not indicative of malingering. Indeed, both physicians who reported a single Waddell sign did not ultimately conclude Plaintiff was malingering. However, given its recurrence, and in light of Dr. Phillips concerns about malingering, it is a relevant factor in the ALJ's consideration of Plaintiff's credibility. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); see also Smolen, 80 F.3d at 1284 (holding that

1  the ALJ is permitted to utilize the ordinary techniques of credibility evaluation); 20 C.F.R.
2  416.929; SSR 96-7p.

3  Additional evidence supports the ALJ's concerns of malingering.  The State
4  Agency reported that Plaintiff's complaints about her symptoms exceeded the medical findings.
5  AT 157.  This conclusion was reached by medical experts following an independent review of
6  Plaintiff's records, and came prior to any mention of malingering by Dr. Phillips or Dr. Quon.

7  The ALJ also described Plaintiff's daily activities and found them inconsistent
8  with her complaints.  At the time of her application, Plaintiff stated that she could run for short
9  distances while playing with her grandchildren, shop up to two times a week, and carry up to two
10 shopping bags.  AT 76-77.  Plaintiff testified to being able to do the laundry, perform some light
11 cleaning, shop for up to 45 minutes weekly, and cook three times a week.  AT 242-43.  Plaintiff
12 also testified that she is able to drive up to 50 minutes.  AT 263.

13 The ALJ found these activities inconsistent with Plaintiff's complaints of
14 disabling pain.  The mere fact that Plaintiff is able to engage in some daily activities does not
15 compromise her subjective complaints of pain.  See Benecke v. Barnhart, 379 F.3d 587, 594 (9th
16 Cir. 2004); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Fair, 885 F.2d at 603
17 (holding that one need not be "utterly incapacitated" in order to be disabled).  However, the ALJ
18 described activities performed by Plaintiff that are consistent with those necessary for productive
19 work.  See Morgan, 169 F.3d at 600 (finding plaintiff's ability to fix meals, do laundry and yard
20 work, and occasionally care for a friend's child sufficient to undermine complaints of pain).
21 Such a finding was supported by substantial evidence.

22 The factors considered by the ALJ were all valid and supported by substantial
23 evidence in the record.  The lack of medical support for Plaintiff's complaints, the concerns
24 about malingering, and the nature of Plaintiff's daily activities are clear and convincing reasons
25 upon which to make a credibility assessment.  The ALJ's credibility determination was based on
26 permissible grounds and will not be disturbed.

1           e. The ALJ Properly Determined That Plaintiff Could Perform Her Past Relevant Work.

2           The ALJ found plaintiff capable of performing light work with no more than occasional climbing, stooping, crawling, crouching, or kneeling. AT 22. The ALJ reached this conclusion based upon his assessment of the medical evidence, as well as the testimony of Plaintiff and other third parties in the record. As a result of this finding, the ALJ determined that Plaintiff could perform her past relevant work as a sales clerk or dental assistant. This finding was not in error.

           As discussed above, the ALJ properly adopted the opinion of the State Agency that Plaintiff could perform light work. Plaintiff's past relevant work as a sales clerk or dental assistant is classified in the Dictionary of Occupational Titles[3] as requiring only a light level of exertion and no more than occasional postural manipulation. DOT # 290.477-014; 079.361-018. There was no error in finding Plaintiff could perform her past relevant work. See Sanchez v. Secretary of HHS, 812 F.2d 509, 511 (9th Cir. 1987) (plaintiff not disabled if he or she can perform past work as performed in national economy).

/////
/////
/////
/////
/////
/////
/////

---

[3] The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991) ("DOT") is relied on routinely by the Social Security Administration "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements. The DOT is a primary source of reliable job information for the Commissioner. 20 C.F.R. § 404.1566(d)(1).

1  The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

    1.  Plaintiff's motion for summary judgment or remand is denied, and

    2.  The Commissioner's cross-motion for summary judgment is granted.

DATED:  October 26, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

13Morse.ss.wpd